# **Exhibit 1**

Filed
D.C. Superior Court
04/07/2016 16:17PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

BRICE BRADFORD
209 Wesmond Drive
Alexandria, VA 22305

DAVID FORMAN
520 N. Lemon Street Apt E-5
Media, PA 19063

CASEY SCHREIBER
602 Cavalier Drive
Newport News, VA 23608

and

KENNETH BELL
2012 D St. Ne Apt. 3
Washington, D.C. 20002

*On behalf of themselves and others similarly situated*

        Plaintiffs,

    v.

THE GEORGE WASHINGTON
UNIVERSITY
2121 Eye Street, N.W.
Washington, D.C. 20052

        Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

BRICE BRADFORD, DAVID FORMAN, CASEY SCHREIBER, and KENNETH

BELL ("Plaintiffs"), by and through undersigned counsel, bring this putative class action against

THE GEORGE WASHINGTON UNIVERSITY ("Defendant" or "GWU") on behalf of themselves and on behalf of the public and hereby allege as follows:

## OVERVIEW

1.     GWU oversees and administers a costly online Master's Program in Security and Safety Leadership (SSL). Although the program is advertised as "specifically designed and presented for the online environment" and "learning exactly what you learn in a brick-and-mortar classroom," in reality, the majority of these "online courses" consist of PowerPoint slides taken from in-class courses, without any accompanying lecture, video, explanation, or instruction.

2.     Plaintiffs enrolled in the online SSL program believing they would participate in online coursework specifically adapted to the online environment. Instead, they received ***no instruction*** to accompany the often nonsensical PowerPoint slides pilfered from other instructors' in-class lessons in any of their 12 online courses. Paradoxically, Plaintiffs paid ***more*** to participate in the online program with recycled PowerPoint slides and no formal instruction than students who chose the classroom version of the program.

3.     Plaintiffs each paid over $28,000 in tuition to participate in what they believed would be a specialized online educational program. Upon realizing they had been deceived, Plaintiffs repeatedly complained to the administration about the quality of the program and the complete lack of instruction. Plaintiffs asked for a refund on numerous occasions. GWU assured Plaintiffs that the problems in Plaintiffs' courses were isolated and would be fixed; they were not.

4.     GWU's failure to provide an online SSL program as promised cost each Plaintiff tens of thousands of dollars.

## PARTIES

5.      Plaintiff BRICE BRADFORD is a senior law enforcement consultant for Intelliware Systems. Plaintiff BRICE BRADFORD is a resident of the Commonwealth of Virginia presently residing at 209 Wesmond Dr., Alexandria, Virginia, and was enrolled in the online SSL program administered by GWU from January 2012 to May 2013.

6.      Plaintiff DAVID FORMAN was an active duty naval officer for six years as a Lieutenant O3. He currently works at Oracle and is in the naval reserve. Plaintiff DAVID FORMAN is a resident of the state of Pennsylvania presently residing at 520 N Lemon Street, Apt 5 E-5, Media, Pennsylvania, and was enrolled in the online SSL program administered by GWU from January 2012 to May, 2013.

7.      Plaintiff CASEY SCHREIBER is a senior police officer in Newport News, Virginia. Plaintiff CASEY SCHREIBER is a resident of the Commonwealth of Virginia presently residing at 602 Cavalier Dr., Newport News, Virginia, and was enrolled in the online SSL program administered by GWU from January 2012 to August, 2013.

8.      Plaintiff KENNETH BELL is an active duty Air Force Captain. Plaintiff KENNETH BELL is a permanent resident of the state of Texas presently residing at 2012 D St NE Apt 3, Washington, D.C., and was enrolled in the online SSL program administered by GWU from January 2012 to May 2013.

9.      Defendant, THE GEORGE WASHINGTON UNIVERSITY, is a private university with its main campus located in the District of Columbia.

## VENUE & JURISDICTION

10.      This Court has subject matter jurisdiction over this action and venue is appropriate in this court pursuant to D.C. Code § 11-921 and D.C. Code § 28-3905(k)(1).

3

11.     This court has personal jurisdiction over GWU pursuant to D.C. Code §13-422 and §13-423. GWU is a private university with its headquarters and main campus in the District of Columbia. GWU conducts substantial business in the District of Columbia and had extensive, systematic and continuous contact within the District of Columbia.

12.     A substantial part of the actions which gave rise to Plaintiffs' causes of action occurred in this jurisdiction.

## GENERAL FACTUAL ALLEGATIONS

13.     The online SSL Master's program is a 16-month program in Security and Safety Leadership administered by GWU. The program is comprised of 12 courses (36 academic credit hours) culminating in a Master of Professional Studies degree. The program is offered both online and in a traditional classroom setting. The two programs are marketed as substantially identical, and purport to offer identical educational experiences. But there remains one crucial difference between the two programs: the in-class program actually provides instruction, while the online version does not. Inexplicably, students are required to pay *more* per credit hour for the slapdash online program, than for the traditional in-class program.

14.     GWU solicits applications and enrollment in the SSL online program through a series of misrepresentations. These misrepresentations are made both on the program website, and through the program's admissions advisors via email and telephonically. The misrepresentations are designed to present the program as something that it is not: a credible, long-standing program, with courses and content specifically designed for the online learning environment. In reality, at the time Plaintiffs applied for the online program, there were no graduates of the program and the "content" mostly consisted of scanned-in PDFs of textbooks

4

(with blurry pages and sentences cut off) and PowerPoint slides taken from the in-class courses, without any narration or explication.

## GWU'S MISREPRESENTATIONS

15.     The following paragraphs summarize some, although not all, of GWU's misrepresentations to Plaintiffs and the putative class.

16.     ***Misrepresentation: The SSL program is "designed and presented for the online environment."***

17.     ***Reality:*** The SSL program is not a specialized online program. Plaintiffs did not receive any online-specific content to convey the course material. In the online program, students were provided the PowerPoint slides from in-class courses ***without any accompanying lecture or video***. But the slides were not meant as standalone material.  By themselves, these slides were not courses and they most certainly were not "designed and presented for the online environment." The PowerPoint slides were meant to convey content for an entire unit, which represented two weeks of in-class instruction. But the slides by themselves did not convey anything at all. For example, the entirety of Unit 8 of Emergency Management & Crisis Preparedness (equivalent of two weeks of in-class instruction) consisted of the following four slides:



**THE GEORGE WASHINGTON UNIVERSITY**

Search  Outline  Notes  Thumbnails

PSEL 6262 - Emergency Management & Comm
Objectives
Communication Transactions
Spectrum of Ongoing Emergency Communicati
Communication Audiences

## Objectives

For the final exam, please review the following slides on:

- Understanding the details and issues on emergency communications which belong in an Emergency Operations Plan
- Identifying guidance issues on shelter in place and evacuation issues in an Emergency Operations Plan



**THE GEORGE WASHINGTON UNIVERSITY**

Search  Outline  Notes  Thumbnails

PSEL 6262 - Emergency Management & Comm
Objectives
Communication Transactions
Spectrum of Ongoing Emergency Communicati
Communication Audiences

## Communication Transactions

- Messages
- Updates
- SITREPs
- New data, maps, information
- Requirements, problems, new issues
- Validation or clarification
- Advisories and warnings
- Official statements

6





18.     Those four slides, given without any accompanying explication, were the only

"instruction" that the students received for the entire week (which was supposedly equivalent to

two weeks of in-class learning). This was typical of the online SSL program. Moreover, the teacher for this course did not even prepare these slides – they were taken from the in-class course equivalent. Additionally, many of the stolen slides were nonsensical. They contained typos, grammatical errors, and incomplete sentences. The slide below is representative:



19.     The supplementary course material was similarly lacking. Many of the course readings were scanned copies of books, converted to PDF format, which cut off information and blurred entire sentences. These materials similarly were not "designed and presented for the online environment."

20.     *Misrepresentation: the online SSL program is a chance for students to "[learn] exactly what you learn in a brick-and-mortar classroom."*

21. *Reality:* The online SSL program is far inferior, but more costly, than the in-class program. In the in-class SSL program, students attended classes in which the professor lectured, with accompanying PowerPoint slides used as an instructional aid. In the online version, students were handed the slides from the in-class courses and left to fend for themselves. The instructors for the online courses in most cases did not create these PowerPoint slides, they were simply taken from the in-person courses. As a result, if students had questions as to meaning or implication of a slide, the instructors were not capable of providing clarification. This was not the experience of students in a brick and mortar classroom. And yet, students paid more to participate in the online program than the students in the in-class program, despite receiving no instruction.

22. *Misrepresentation: the online SSL program is taught by professors who "specialize in online distance instruction" and "[y]our instructor will be actively involved in guiding and facilitating a student-centered education."*

23. *Reality:* Despite touting the excellence of its instructors in marketing materials for the SSL program the reality was quite the opposite. The instructors did not prepare any course material and were hardly involved at all in any actual online instruction. To the extent each class had an "instructor," the instructors' role was limited to moderating group chatrooms, answering individual questions, and "grading" student work. In these limited roles, the instructors were consistently unresponsive, and demonstrated an unfamiliarity with the subject matter and material. The feedback given to students consistently demonstrated a lack of attention and participation from the instructors. Despite the fact that the courses were online eight weeks in length, in some courses the instructors would not even log on to the online portal for several weeks at a time.

9

24.     *Misrepresentation: the online SSL program offered video presentations to enhance the learning experience.*

25.     *Reality:* There were none. GWU did not provide video presentations in any of the 12 courses in the online program.

26.     *Misrepresentation: in the online SSL program, students would be able to review "lectures" daily.*

27.     *Reality:* There were no lectures. GWU did not provide meaningful instruction to accompany the course PowerPoint slides in any of the 12 courses in the SSL online program.

28.     *Misrepresentation: the online SSL program is "universally lauded by alumni."*

29.     *Reality:* There were no alumni of the online SSL program at the time the students applied for and enrolled in the program.

30.     *Misrepresentation: the online SSL program is accredited by The Middle States Association of Colleges and Schools.*

31.     *Reality:* The Middle States Association of Colleges and Schools (now the Middle States Commission on Higher Education) does not accredit specific programs and the GWU's online SSL program has no such accreditation.

32.     *Misrepresentation: the Fall 2012 online SSL program was postponed "due to the popularity of the program and the large size of [the] current cohorts[.]"*

33.     *Reality:* GWU later admitted that they postponed the start date of the program "due to a lack of professors to staff the program, as well as not having enough students to form a full cohort."

## GWU IGNORES REPEATED STUDENT COMPLAINTS

34.     GWU was made aware of the program's shortcomings and did nothing to rectify the situation. Several students first submitted a formal complaint to GWU on January 21, 2012 less than two weeks after their program began. GWU acknowledged receiving multiple complaints regarding the program and promised to make improvements.

35.     On February 21, 2012, another student again complained to GWU about the quality of the courses, exclaiming, "I, personally, expected more from the educational experience at The George Washington University."

36.     On February 22, 2012, another student emailed GWU about the quality of instruction. In response, an agent of GWU stated, "I'm so sorry and I know you will have a better experience with GWU. I know this . . . Keep the faith and you will see an improvement."

37.     On February 22, 2012, another student emailed the program director stating, "I expected much, much better from a university like GW."

38.     GWU continued to promise that the program would improve. However, in the following months, no improvements were made. The online "courses" continued to consist of co-opted PowerPoint slides from the in-class course counterparts, with no accompanying video or lecture. By and large, the students were left to teach themselves the material.

39.     On November 11, 2012, Plaintiff BRICE BRADFORD emailed Dr. Lemieux about the lack of quality instruction in the online SSL program. He wrote, "for what we're paying, it is simply very disappointing, and perpetually frustrating."

40.     On November 13, 2012, another student emailed Dr. Lemieux to complain about the lack of instruction in yet another online SSL course. Dr. Lemieux responded: "Unfortunately [the professor] is dealing with something that is not her material..."—material that was merely

11

borrowed from the in-classroom version of the course taught by another instructor—"…I would encourage you to be patient…"

41.     On November 19, 2012, a student in the cohort again wrote Dr. Lemieux to complain about the inadequacy of instruction. The student reasoned, "Circumstances might explain a particular absence, but this is not an isolated instance. Instructor participation has steadily declined as the [SSL] program has progressed . . . I would [ ] like to know whether my [employer] can expect a refund for this class. If not, is it GWU's position that instructors are not necessary for adequate graduate education?"

42.     Despite the numerous complaints, GWU offered no refund or remedy to Plaintiffs.

43.     On May 20, 2013, eleven students from the May 2013 cohort wrote a letter to Dr. Steven Knapp, the President of GWU. The letter stated that the recent alumni felt "cheated out of the quality education that attracted [them] to GWU" because "students were left to fend for themselves" without the benefit of professors with "the necessary teaching expertise to provide students with a stimulating educational experience in an entirely virtual environment." One of the letter's closing paragraphs concluded aptly, "what is it that we're paying for, exactly?"

44.     In response, the Dean of GWU's College of Professional Studies—the college to which the SSL program is aligned—called several of the Plaintiffs and apologized for the dysfunction of the SSL program. GWU's Dean offered to make amends "however he could help." Despite this admission that the program failed to live up to GWU's promises, GWU did nothing to rectify the situation.

45.     Plaintiffs BRICE BRADFORD, DAVID FORMAN, and KENNETH BELL graduated from the program in May 2012. They each spent over $28,000 on tuition. Plaintiff

CASEY SCHREIBER graduated in the summer of 2013, having spent over $40,000 on tuition for the program.

46.     In sum, Plaintiffs were deceived into spending tens of thousands on tuition alone for a program that functionally required them to teach themselves the material. They paid *more* than their peers who completed the same degree in a classroom, and yet received far less. That was not what GWU advertised and it is not what Plaintiffs paid for.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

48.     The proposed Class is defined as follows:

> All United States residents who paid tuition to The George Washington University for the online Security & Safety Leadership program.

49.     Excluded from the Class is the Defendant, its parent companies, subsidiaries, and affiliates; any co-conspirators; federal government entities and instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; and any judicial officer presiding over this matter and his or her staff.

50.     Membership of the Class is so numerous that joinder of all members is impracticable. The Class compromises dozens if not hundreds of individuals who participated in the online Security & Safety Leadership program at GWU. The Class, however, is readily identifiable from records in the possession, custody, or control of the Defendant.

51.     The claims of the named Plaintiffs are typical of the Class. GWU engaged in a uniform course of conduct, advertising its SSL program as designed for the online environment, with professors who specialized in online education, when in reality its "online program"

13

consisted of shoddy PowerPoint slides taken from the in-class version of each course. Plaintiffs and the Class were harmed by GWU's misrepresentations in the same manner.

52.     Plaintiffs' claims and those of the Class involve common questions of law and fact, including: (1) whether GWU misrepresented material facts when advertising its online SSL program (2) whether GWU represented its online SSL program was of a particular quality when in fact it was not (3) whether GWU's advertisements of its online SSL program had the tendency to mislead (4) whether GWU knew or recklessly disregarded that these representations were false when made (5) whether GWU's misrepresentations harmed Plaintiffs and the Class (6) whether GWU was unjustly enriched by this conduct (7) whether Plaintiffs and the Class are entitled to damages, treble damages, restitution, and/or punitive damages.

53.     These common questions predominate over any questions affecting only individual class members.

54.     The named Plaintiffs will fairly and adequately protect the interests of the Class because they have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent.  Furthermore, Plaintiffs have retained counsel experienced and competent in class action litigation.

55.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.

56.     Plaintiffs know of no difficulty to be encountered in the maintenance of this

action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### *VIOLATION OF D.C. CODE § 28-3904 et seq.*
### *CONSUMER PROTECTION PROCEDURES ACT (CPPA)*

57.     Plaintiffs reincorporate by reference each and every preceding paragraph as if

fully restated herein.

58.     This Count is brought on behalf of the Plaintiffs and the general public pursuant

to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-

3901 *et seq.*

59.     GWU is a "person" within the meaning of D.C. Official Code § 28-3901(a)(1),

and provides "services" within the meaning of § 28-3901(a)(7).

60.     Plaintiffs are "consumers" within the meaning of D.C. Official Code § 28-

3901(a)(2).

61.     D.C. Code § 28-3904 makes it an "unlawful trade practice ... whether or not any

consumer is in fact misled, deceived or damaged thereby," to, among other things:

> (a) Represent that goods or services have a source, sponsorship, approval,
> certification, accessories, characteristics, ingredients, uses, benefits, or
> quantities that they do not have;
> (b) Represent that goods or services are of particular standard, quality,
> grade, style, or model, if in fact they are of another;
> (e) Misrepresent as to a material fact which has a tendency to mislead;
> (f) Fail to state a material fact if such failure tends to mislead;
> (f-1) Use innuendo or ambiguity as to a material fact, which has a
> tendency to mislead; and
> (u) Represent that the subject of a transaction has been supplied in
> accordance with a previous representation when it has not.

62.     GWU violated these provisions by, *inter alia*, intentionally representing to

Plaintiffs that the online SSL program was specifically designed for the online learning

15

environment; that the program would include lectures; that the program would be taught by professors who specialized in online learning education; that the program was universally lauded by alumni; that the program had been accredited; that the program would include video presentations to enhance the learning experience; and that the learning experience would be equivalent to that which students would receive in the classroom. In fact, the online SSL program was none of these things.

63.     As a direct and proximate result of GW's misrepresentations, Plaintiffs were damaged in an amount to be determined at trial. Additionally, Plaintiffs are entitled to statutory and treble damages as authorized by D.C. Code §28-3901 *et seq.*

**SECOND CAUSE OF ACTION**

*UNJUST ENRICHMENT*

64.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully set forth herein.

65.     Plaintiffs conferred a benefit on GWU in the amount of tuition for the SSL program.

66.     GWU has been unjustly enriched in retaining revenue derived from Plaintiffs' tuition payments. Retention of these benefits under the circumstances would be unjust and inequitable because GWU falsely and misleadingly represented the nature and quality of the online SSL Master's program to Plaintiffs. Specifically, GWU falsely and misleadingly represented to Plaintiffs that the online SSL program was specifically designed for the online learning environment; that the program would include lectures; that the program would be taught by professors who specialized in online learning education; that the program would include video presentations to enhance the learning experience; and that the learning experience would

16

be equivalent to that which students would receive in the classroom. In fact, the online SSL

Master's program did not live up to any of the above promises.

67.     GWU's misrepresentations caused injuries to Plaintiffs because they would not

have enrolled in the SSL online program and paid tuition had the true facts been known to them.

68.     Because GWU's retention of the non-gratuitous benefits conferred on it by

Plaintiffs is unjust and inequitable, GWU must pay restitution to Plaintiffs for unjust enrichment,

as ordered by the Court.

### THIRD CAUSE OF ACTION

#### *FRAUDULENT MISREPRESENTATION*

69.     Plaintiffs reincorporate by reference each and every preceding paragraph as if

fully restated herein.

70.     GWU made material omissions and affirmative misrepresentations regarding the

quality and nature of the online SSL Master's program.

71.     Specifically, GWU falsely and misleadingly represented to the Plaintiffs that the

online SSL program was specifically designed for the online learning environment; that the

program would include lectures; that the program would be taught by professors who specialized

in online learning education; that the program was universally lauded by alumni, that the

program would include video presentations to enhance the learning experience; and that the

learning experience would be equivalent to that which students would receive in the classroom.

72.     GWU also failed to disclose that there would be no accompanying video or audio

file to explain the PowerPoint slides in any of the 12 courses.

73.     GWU misrepresented why the fall 2011 cohort was delayed. GWU claimed the cohort was delayed due to its popularity, when in fact, it was delayed because there were not enough instructors and not enough students to fill a cohort.

74.     Upon learning that Plaintiffs had complaints about the program, GWU falsely represented that the problems in the complained-about course were isolated, and not representative of the program; and GWU falsely claimed that it would make improvements to the program.

75.     GWU knew, or recklessly disregarded that these representations were false when made. GWU intentionally made these misrepresentations to increase enrollment in its online SSL program, and to prevent students from dropping out of the program once enrolled.

76.     These misrepresentations were material because they were facts that would typically be relied on by someone in deciding whether to enroll, or stay enrolled, in a graduate program.

77.     In deciding to enroll and continue to participate in the SSL program, Plaintiffs relied on GWU's misrepresentations.

78.     As a result of their reliance, Plaintiffs have been injured in an amount to be determined at trial. Plaintiffs are also entitled to punitive damages.

## FOURTH CAUSE OF ACTION

### *NEGLIGENT MISRPRESENTATION*

79.     Plaintiffs reincorporate by reference each and every preceding paragraph as if fully restated herein.

80.     GWU made material omissions and affirmative misrepresentations regarding the quality and nature of the online SSL Master's program.

18

81.    Specifically, GWU falsely and misleadingly represented to the Plaintiffs that the online SSL program was specifically designed for the online learning environment; that the program would include lectures; that the program would be taught by professors who specialized in online learning education; that the program was universally lauded by alumni, that the program would include video presentations to enhance the learning experience; and that the learning experience would be equivalent to that which students would receive in the classroom.

82.    GWU also failed to mention that there would be no accompanying video or audio file to explain the PowerPoint slides in any of the 12 courses.

83.    GWU misrepresented why the fall 2011 cohort was delayed. GWU claimed the cohort was delayed due to its popularity, when in fact, it was delayed because there were not enough instructors and not enough students to fill a cohort.

84.    Upon learning that Plaintiffs had complaints about the program, GWU falsely represented that the problems in the complained-about course were isolated, and not representative of the program; and GWU falsely claimed that it would make improvements to the program.

85.    If GWU had exercised reasonable care, it would have known that these representations were false.

86.    These misrepresentations were material because they were facts that would typically be relied on by someone in deciding whether to enroll, or stay enrolled, in a graduate program.

87.    In deciding to enroll and continue to participate in the SSL program, Plaintiffs relied on GWU's misrepresentations.

19

88.     As a result of their reliance, Plaintiffs have been injured in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

A.      Certify this case as a class action, designate the named Plaintiffs as class representatives, and designate the undersigned attorneys as class counsel;

B.      Monetary damages and disgorgement of unjust profits obtained by GWU;

C.      Statutory damages;

D.      Treble damages as authorized by D.C. Code § 28-3904 *et seq.*;

E.      Punitive damages;

F.      An order requiring GWU to pay Plaintiffs' costs and reasonable attorneys' fees to the extent provided by law; and

G.      Such other relief as the Court deems just and equitable.


**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**


Respectfully submitted,



Hassan A. Zavareei
(D.C. Bar No. 456161)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*

20