UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRICE BRADFORD, et al., on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 16-858 (RBW) |
| v. | ) ) ) | |
| THE GEORGE WASHINGTON UNIVERSITY, | ) ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

The named plaintiffs in this civil action, Brice Bradford, David Forman, Casey Schreiber, and Kenneth Bell, originally filed this putative class action against the defendant, the George Washington University (the "University"), in the Superior Court of the District of Columbia (the "Superior Court"), asserting violations of the District of Columbia Consumer Protection Procedures Act (the "Consumer Protection Act"), D.C. Code §§ 28-3901–28-3913 (2012), and claims for unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation. See Notice of Removal ("Removal Notice") ¶ 1; see also id., Exhibit ("Ex.") 1 (Class Action Complaint ("Compl.")) ¶¶ 57–88. Currently pending before the Court are the Plaintiffs' Motion to Remand to the Superior Court of the District of Columbia ("Pls.' Remand Mot.") and the Defendant's Motion to Dismiss All Claims ("Def.'s Mot."). For the reasons discussed below, the Court concludes that it can exercise jurisdiction over the plaintiffs' claims, and the plaintiffs'

motion to remand must therefore be denied. The Court also concludes that it must grant the defendant's motion to dismiss.[1]

## I.  BACKGROUND

On April 7, 2016, the plaintiffs filed this putative class action against the University in the Superior Court. Removal Notice ¶ 1. The plaintiffs allege that they each "paid over $28,000 in tuition to participate in what they believed would be a specialized online education program" provided by the defendant. Compl. ¶ 3. Plaintiffs Bradford, Forman, and Bell were enrolled in the program from January 2012 to May 2013, while plaintiff Schreiber was enrolled from January 2012 to August 2013. Id. ¶¶ 5–8. This online education program on Security and Safety Leadership ("SSL") was allegedly marketed "as substantially identical" to the same course offered "in a traditional classroom setting." Id. ¶ 13. The plaintiffs allege, however, that the online SSL program is not equivalent to the classroom version, and that the defendant "solicits applications and enrollment in the SSL online program through a series of misrepresentations . . . made both on the program website, and through the program's admissions advisors." Id. ¶¶ 13–33. Specifically, the plaintiffs claim that "students were provided the PowerPoint slides from in-class courses without any accompanying lecture or video," id. ¶ 17, that were "nonsensical" and "contained typos, grammatical errors, and incomplete sentences," id. ¶ 18. They also contend that "[t]he supplementary course material was . . . lacking," as "[m]any of the course readings were scanned copies of books . . . which cut off information and blurred

---

[1] In addition to the documents already referenced, the Court considered the following submissions in rendering its decision: (1) the plaintiffs' Memorandum in Support of Plaintiffs' Motion To Remand to the Superior Court of the District of Columbia ("Pls.' Remand Mem."); (2) the Defendant's Memorandum in Opposition to Plaintiffs' Motion To Remand ("Def.'s Remand Opp'n"); (3) the Plaintiffs' Reply in Support of Motion to Remand to the Superior Court of the District of Columbia ("Pls.' Remand Reply"); (4) the Defendant's Memorandum in Support of Motion To Dismiss All Claims ("Def.'s Mem."); the Plaintiffs' Opposition to Defendant's Motion To Dismiss All Claims ("Pls.' Opp'n"); and (5) the Defendant's Reply Memorandum in Further Support of Motion To Dismiss All Claims ("Def.'s Reply").

2

entire sentences." Id. ¶ 19. The plaintiffs further allege that the online SSL program instructors "did not prepare any course material and were hardly involved at all in any actual online instruction." Id. ¶ 23. Moreover, according to the plaintiffs, the defendant misrepresented that the fall 2012 online SSL program had to be postponed due to its popularity and large class size, id. ¶¶ 32–33, and that the online SSL program is "universally lauded by alumni," id. ¶¶ 28–29.

The plaintiffs allege that the defendant "was made aware of the program's shortcomings and did nothing to rectify the situation." Id. ¶ 34. They contend that "[s]everal students first submitted a formal complaint to [the defendant] on January 21, 2012[,] less than two weeks after their program began." Id. ¶ 34. Purportedly, from January 2012 until mid-November 2012, students complained to the defendant about the quality of the program and the defendant allegedly "continued to promise that the program would improve[,] . . . [but] no improvements were made." Id. ¶¶ 34–43. On May 20, 2013, "eleven students from the May 2013 cohort wrote a letter to Steven Knapp," the president of the University, expressing their disappointment with the program. Id. ¶ 43. In response to this letter, the Dean of College of Professional Studies allegedly "called several of [the plaintiffs] and apologized for the dysfunction of the SSL program." Id. ¶ 44. However, "[d]espite the numerous complaints," the plaintiffs represent that the defendant "offered no remedy" or "did nothing to rectify the situation." Id. ¶¶ 42, 44.

The putative class of plaintiffs is defined as "[a]ll United States residents who paid tuition to [t]he . . . University for the online [SSL] program," and the plaintiffs assert that the "claims of the named [p]laintiffs are typical of the [c]lass." Id. ¶¶ 48, 51. The plaintiffs' first cause of action alleges a violation of the Consumer Protection Act. See Compl. ¶¶ 57–63. The plaintiffs also assert claims for unjust enrichment, see id. ¶¶ 64–68, fraudulent misrepresentation, see id. ¶¶ 69–78, and negligent misrepresentation, see id. ¶¶ 79–88. The Class Action Complaint seeks

3

"monetary damages and disgorgement of unjust profits obtained" by the defendant, statutory damages, treble damages, punitive damages, and "reasonable attorneys' fees." Id. at 20.

The defendant filed a notice of removal, asserting that this Court has jurisdiction under the Class Action Fairness Act (the "CAFA"), 28 U.S.C. § 1332(d) (2012). See Removal Notice ¶¶ 10–20. The defendant contends that jurisdiction lies with this Court under the CAFA because "[o]ver 300 individuals are members of the proposed class," satisfying "[the] CAFA's numerosity requirement." Id. ¶ 14. The defendant further claims that the CAFA amount-in-controversy requirement is satisfied "because [the plaintiffs] seek restitution of all tuition payments . . . , as well as statutory damages, treble damages, punitive damages, and reasonable costs and attorney's fees, which in the aggregate could exceed $5 million." Id. ¶ 16. The plaintiffs subsequently filed a motion to remand the case to the Superior Court, alleging that jurisdiction does not lie with this Court under the CAFA. See Pls.' Remand Mot. at 1; see also Pls.' Remand Mem. at 2–3.[2] The defendant has now filed a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6), requesting "dismissal of all putative class-action claims." Def.'s Dismiss Mot. at 1.

## II.  STANDARDS OF REVIEW

### A.  Motion to Remand Under 28 U.S.C. § 1447(c)

"A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." Nat'l Consumers League v. Flowers Bakeries, L.L.C., 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a) (2012)). "If a defect in removal procedures or lack of subject-matter jurisdiction becomes apparent at any point prior to final judgment, the removal court must remand the case to the state

---

[2] The page references used by the Court when citing the plaintiffs' memorandum in support of their motion for remand refer to the pagination automatically generated by the Court's ECF system.

court from which the defendants originally removed the case." Julien v. CCA of Tenn., Inc., 268 F. Supp. 2d 19, 21 (D.D.C. 2003) (citing 28 U.S.C. § 1447(c)). Whenever a plaintiff seeks to remand a case that was removed to federal court back to state court, "[t]he party opposing [the] motion to remand bears the burden of establishing that subject[-]matter jurisdiction exists in federal court." Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W., 366 F. Supp. 2d 33, 36 (D.D.C. 2005) (Walton, J.). "Because of the significant federalism concerns involved, [a court would ordinarily] strictly construe[] the scope of its removal jurisdiction." Breakman v. AOL, L.L.C., 545 F. Supp. 2d 96, 100–01 (D.D.C. 2008) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 107–09 (1941)). Under the CAFA, however, "no antiremoval presumption" attaches because "Congress enacted [the CAFA] to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co. v. Owens, ___ U.S. ___, ___, 135 S. Ct. 547, 554 (2014) (citing Standard Fire Ins. Co. v. Knowles, ___ U.S. ___, ___, 133 S. Ct. 1345, 1350 (2013)).

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A motion under Rule 12(b)(6) tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making this assessment, a plaintiff receives the "benefit of all inferences that can be derived from the facts alleged," Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citation omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice,"

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement. Iqbal, 556 U.S. at 678. Rather, a claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must accept the plaintiff's factual allegations as true, conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." Id. at 679.

### III. ANALYSIS

Before reaching the merits of the defendant's motion to dismiss, the Court must first address the plaintiffs' motion to remand, which raises a challenge to the Court's jurisdiction.

#### A. The Plaintiffs' Motion to Remand

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" Dart Cherokee, ___ U.S. at ___, 135 S. Ct. at 551 (quoting 28 U.S.C. § 1446(a)). "When removal is based on diversity of citizenship, an amount-in-controversy requirement must be met." Id. In class actions, however, "the requirement of diversity of citizenship is relaxed." Id. Accordingly, the CAFA gives "federal courts jurisdiction over certain class actions[] . . . if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." McMullen v. Synchrony Bank, 82 F. Supp. 3d 133, 137–38

(D.D.C. 2015) (alteration in original) (quoting Dart Cherokee, ___ U.S. at ___, 135 S. Ct. at 552); see also 28 U.S.C. § 1332(d).[3]

In support of the plaintiffs' motion to remand, they argue that the defendant "provided no evidentiary basis for its barebones assertion" that this action "meets the requirements for CAFA jurisdiction." Pls.' Remand Mem. at 2–3. They specifically argue that the defendant failed to establish both the numerosity and the amount-in-controversy requirements of the CAFA. See id. at 3. The Court disagrees.

The CAFA mandates that the "the proposed plaintiff class must consist of 100 or more people." McMullen, 82 F. Supp. 3d at 138 (citing 28 U.S.C. § 1332(d)(5)(B)). And while it is true that a defendant's "reliance on a plaintiff's estimate of class size alone fails to meet the defendant's burden of establishing jurisdiction," see id. (citing Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 155 (D.D.C. 2007)), here, the University submitted the Declaration of Joachim Knop, who is identified as the University's "Director of Institutional Research and Planning . . . ," see Def.'s Remand Opp'n, Ex. 1 (Declaration of Joachim Knop ("Knop Decl.")) ¶ 2. The Knop Declaration states that he "reviewed the University's business records and analyzed the number of United States residents who paid tuition for the online [SSL] program . . . at the University, and the amounts paid in tuition by those U.S.-resident students and other sources." Id., Ex. 1 (Knop Decl.) ¶ 4. Knop's analysis concluded that since 2010, at least 248 students paid some tuition for the online SSL course, and that the "aggregate tuition and fee charges for these 248 students totaled $5,911,464.02." Id., Ex. 1 (Knop Declaration) ¶¶ 5–7. Of that sum, the 248 students actually paid—either from their own funds or using loan proceeds—$4,390,805.99. See id., Ex. 1 (Knop Decl.) ¶ 8.

---

[3] There is no dispute here that the CAFA's minimal diversity requirement is satisfied. See Removal Notice ¶ 12; see also Compl. ¶¶ 5–9; Pls.' Remand Opp'n 3–6.

The plaintiffs challenge this evidence as inadmissible under the Federal Rules of Evidence, arguing that statements in the Knop Declaration do not satisfy the business records exception to the prohibition on hearsay and that the statements violate the best evidence rule. See Pls.' Remand Reply at 2–3 (citing Fed. R. Evid. 803(6) and 1002). Although the Ninth Circuit observed that the "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation," Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1198 (9th Cir. 2015); see also Sloan v. Soul Circus, Inc., No. 15-01389, 2015 WL 9272838, at *13 (D.D.C. Dec. 18, 2015) (citing Ibarra, 775 F.3d at 1198), a contention relied upon by the plaintiffs, see Pls.' Remand Reply at 1, the Court does not agree with the plaintiffs that the Knop Declaration fails to provide reliable evidence regarding the number of putative class members and the amount-in-controversy, jurisdictional elements the Court need only determine by a preponderance of the evidence standard, see Dart Cherokee, ___ U.S. at ___, 135 S. Ct. at 554. Knop declares under the penalties of perjury and based on his personal knowledge that, in his professional capacity as the University's "Director of Institutional research and Planning," Def.'s Remand Opp'n, Ex. 1 (Knop Decl.) ¶ 2, he has "access to and regularly utilizes" the University's "records related to enrollment, tuition, payment, and other attendance matters," and that he analyzed those records to determine the number of potential plaintiffs and amount of tuition paid to the University for the SSL course, see id., Ex. 1 (Knop Decl.) ¶¶ 3–4. And while the declaration does not recite the precise language of an exception to the hearsay rule, see generally id., Ex. 1 (Knop Decl.), the Court is persuaded that the information contained in the University's enrollment, tuition, payment, and attendance records would be admissible at trial. See Fed. R. Civ. P. 803(6) (outlining the business records exception to the hearsay rule); see, e.g., United States v. Bonomolo, 566 F. App'x 71, 73–74 (2d Cir. 2014) (holding that

8

"spreadsheets detailing the Pell Grants received by" the plaintiff's school were admissible as a business record) accord Garcia v. Wal-Mart Stores, Inc., ___ F. Supp. 3d ___, ___, 2016 WL 5019102, at *5 (C.D. Cal. Sept. 19, 2016) (in a decision resolving a motion for remand, acknowledging that the "defendant 'does not necessarily have to produce evidence in a form that would be admissible at trial[.]' 'It would be sufficient if the contents of the [records] are admissible at trial, even if the [records themselves] may be inadmissible.'" (alterations in original) (emphasis added) (quoting Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001), and Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003))).

      The Court finds on the record before it that the defendant has established by a preponderance of the evidence that the putative class contains at least 248 plaintiffs, see Def.'s Remand Opp'n, Ex. 1 (Knop Declaration) ¶ 6, and therefore, the CAFA's numerosity requirement is satisfied. In addition, given that these students paid over $4,000,000 for the online SSL course, see id., Ex. 1 (Knop Decl.) ¶ 8, and in light of the plaintiffs' request for treble and punitive damages and reasonable attorney's fees, see Compl. at 20, the Court concludes that the defendant has also established by a preponderance of the evidence that the amount in controversy exceeds the CAFA's $5,000,000 threshold, see Hartigh v. Latin, 485 F.2d 1068, 1071–72 (D.C. Cir. 1973) (stating that it "is clear that punitive damages should be considered" when calculating a jurisdictional amount-in-controversy (citing Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240 (1943))); see also Frederico v. Home Depot, 507 F.3d 188, 199 (3d Cir. 2007) (considering attorneys' fees in calculating the CAFA amount-in-controversy requirement); McMullen, 82 F. Supp. 3d at 139 (using treble damages in determining whether the CAFA amount-in-controversy requirement is satisfied).

Accordingly, the Court finds that the University has established that the CAFA's requirements are satisfied, and the plaintiff's motion to remand will therefore be denied.

B. **The University's Motion to Dismiss**

The defendant contends that that the Court should "dismiss this case in its entirety, pursuant to [the] Federal Rule of Civil Procedure 12(b)(6)," specifically arguing that each of the plaintiffs' claims are barred by a statute of limitations. Def.'s Dismiss Mem. at 1. "Generally, [a] statute of limitations is invoked as an affirmative defense, and the defendant bears the burden of showing that a claim is time-barred." Logan v. Lasalle Bank Nat'l Ass'n, 80 A.3d 1014, 1019–20 (D.C. 2013) (citation omitted). "At the Rule 12(b)(6) stage, a court should not dismiss on statute of limitations grounds unless the claim is time-barred on the face of the complaint." Id. at 1020 (citing Brin v. S.E.W. Inv'rs, 902 A.2d 784, 800–01 (D.C. 2006); see also Bregman v. Perles, 747 F.3d 873, 875 (D.C. Cir. 2014) ("[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." (alteration in original) (citations omitted)).

A statute of limitations begins to run whenever a cause of action "accrues," meaning when "the plaintiff can file suit and obtain relief." Heimeshoff v. Hartford Life & Accident Ins. Co., ___ U.S. ___, ___, 134 S. Ct. 604, 610 (2013) (citation omitted). Courts can determine the accrual of a claim from the moment a party has "actual notice of her [or his] cause of action." Medhin v. Hailu, 26 A.3d 307, 310 (D.C. 2011) (citing Harris v. Ladner, 828 A.2d 203, 205–06 (D.C. 2003)). If, however, "the relationship between the fact of injury and the conduct is obscure, the so-called 'discovery rule' will apply, such that the claim does not accrue until the claimant knows or by the exercise of reasonable diligence should know of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." Id. (citing Bussineau v. President & Dirs.

of Georgetown Coll., 518 A.2d 423, 435 (D.C. 1986). Pursuant to this rule, a plaintiff does not have complete freedom to "defer legal action indefinitely if she [or he] knows or should know that she [or he] may have suffered injury and that the defendant may have caused her [or him] harm." Hendel v. World Plan Exec. Council, 705 A.2d 656, 661 (D.C. 1997). Further, a plaintiff need not sustain, or even identify, all damages for a cause of action to accrue, as "any appreciable and actual harm flowing from [a defendant's] conduct is sufficient." Beard v. Edmondson & Gallagher, 790 A.2d 541, 546 (D.C. 2002) (citations omitted).

Here, the Court finds that the plaintiffs' claims for violations of the Consumer Protection Act, see Compl. ¶¶ 57–63, unjust enrichment, see id. ¶¶ 64–68, fraudulent misrepresentation, see id. ¶¶ 69–78, and negligent misrepresentation, see id. ¶¶ 79–88, are all time-barred by a three-year statute of limitations.

### 1. The Plaintiffs' Claims Under the Consumer Protection Act

The Consumer Protection Act does not designate a statute of limitations. See generally D.C. Code §§ 28-3901 to 28-3913. However, under District of Columbia law, a "three-year statute of limitations applies when no other period of limitation is specified for an action." Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 323 (D.C. 2008) (citing D.C. Code § 12-301(8)). Therefore, "[a] plaintiff must bring an action based on the Consumer Protection Procedures Act within three years from the time the right to maintain the action accrues." Koker v. Aurora Loan Servicing, LLC, 915 F. Supp. 2d 51, 59 (D.D.C. 2013) (quoting Murray, 953 A.2d at 323).

Here, it is apparent on the face of the Complaint that the plaintiffs discovered the defendant's alleged violations shortly after enrolling in the online SSL program in early 2012. The Complaint alleges that the University violated various provisions of the Consumer

Protection Act, see Compl. ¶ 61, by "intentionally representing to [the plaintiffs] that the online SSL program" would be of a certain quality and have certain characteristics, id. ¶ 62. The Complaint states that the plaintiffs became aware "of the program's shortcomings" and "submitted a formal complaint to [the defendant] on January 12, 2012[, which was] less than two weeks after their program began." Id. ¶ 34 (emphasis added). Further, the plaintiffs, "[u]pon realizing they had been deceived, . . . repeatedly complained" about the program from January 2012 until November 2012. Id. ¶¶ 3, 34–41 (emphasis added). The plaintiffs even elaborate that one November 2012 complaint stated that "the inadequacy of instruction . . . is not an isolated instance" and asked whether the complaining student could "expect a refund for this class." Id. ¶ 41 (emphasis added). It is reasonable to infer that a plaintiff would not have requested a refund of his or her tuition unless he or she had good reason to believe that the University had engaged in wrongdoing.

Accepting these allegations in the complaint as true, which the Court must do when considering a motion to dismiss, the Complaint clearly shows that the plaintiffs were aware, or should have been aware, of the defendant's alleged misrepresentations in early 2012. Contrary to the plaintiffs' arguments in their opposition, see generally Pls.' Opp'n at 7–17, it was not necessary for them to know the precise extent and nature of the defendant's allegedly wrongful conduct for the claim to accrue, see Drake v. McNair, 993 A.2d 607, 617–18 (D.C. 2010) ("[I]t is well established that 'general knowledge that [the defendant's conduct] was wrongful,' rather than knowledge of the 'precise legal remedies for [that wrongful conduct],' is the focus of [the] discovery rule." (quoting East v. Graphic Arts Indus. Joint Pension Tr., 718 A.2d 153, 157 (D.C. 1998))); see also Crafton v. District of Columbia, 132 F. Supp. 3d 1, 10 (D.D.C. 2015) ("Although a claim will not accrue until a plaintiff has 'some evidence of wrongdoing,' accrual

is not delayed merely because the plaintiff does not 'have knowledge of the precise breadth or nature of the tortious action.'" (quoting Brin, 902 A.2d at 792)).

The Court is unpersuaded by the plaintiffs' reliance on the continuing tort doctrine, see Pls.' Opp'n at 11, because that doctrine is squarely at odds with the plain language of the Complaint. "In the District of Columbia, a continuing tort can be established for statute of limitations purposes by showing (1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act . . . within the limitation period." Beard, 790 A.2d at 547–48 (alteration in original) (citation omitted). But the hallmark of a continuing tort is that "its character as a violation did not become clear until it was repeated during the limitations period." Taylor v. FDIC, 132 F.3d 753, 765 (D.C Cir. 1997). Thus, "once the plaintiff has been placed on notice of an injury and the role of the defendant[']s wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." Hendel, 705 A.2d at 667.

Here, the Complaint shows that the University's alleged violation became clear to the plaintiffs as early as two weeks after the online SSL program began. See Compl. ¶ 34 (stating that a formal complaint was lodged with the University on January 21, 2012). The Complaint further states that additional student complaints were lodged during the February to November 2012 time period, see id. ¶¶ 35–41 (detailing the several complaints), but the University "offered no refund or remedy," id. ¶ 42. Although it is concerning that online SSL program students allegedly received sub-par instruction from the University, the Court cannot disregard the fact that the Complaint establishes that the plaintiffs were on notice of the University's alleged violation in early January 2012, and the Court cannot sanction their failure to timely seek legal relief within the required limitations period.

13

Similarly unavailing is the plaintiffs' invocation of equitable tolling based on allegations that the University promised it would improve the online SSL program.  See Pls.' Opp'n at 15–17; see also Compl. ¶¶ 3, 34, 36, 38, 40, 44, 74.  The doctrine of equitable estoppel, often referred to as "lulling," comes into "play if the defendant takes active steps to prevent the plaintiff from suing in time."  Gonzalez v. Internacional de Elevadores S.A., 891 A.2d 227, 241 (D.C. 2006).  This doctrine was "designed to create a very narrow equitable exception to rigorous filing requirements."  Daniels v. Potomac Elec. Power Co., 100 A.3d 139, 142 (D.C. 2014) (quoting Kamerow v. D.C. Rental Hous. Comm'n, 891 A.2d 253, 258 (D.C. 2006)); see also East, 718 A.2d at 157 ("This court has construed the lulling doctrine narrowly.").  For example, "affirmative acts employed by a party to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action toll the running of the limitations period."  Chappelle's Estate v. Sanders, 442 A.2d 157, 158 (D.C. 1982).

Here, the plaintiffs assert that the University's "continual promises of improvement [of the online SSL program] may constitute fraudulent concealment of their wrongful conduct such that a reasonable person . . . acting diligently would not have prosecuted his rights."  Pl.'s Opp'n at 16–17 (internal quotation marks omitted).  The Complaint alleges that the University "promised to make improvements" to the online SSL program after receiving complaints in January 2012.  Compl. ¶ 34.  And according to the plaintiffs, in February 2012, "an agent of [the University] stated, 'I'm so sorry and I know you will have a better experience with [the University.  I know this . . . Keep the faith and you will see an improvement.'"  Id. ¶ 36.  The plaintiffs allege that the University allegedly "continued to promise that the program would improve," but "[b]y and large, the students were left to teach themselves the material."  Id. ¶ 38.  After another student complaint in November 2012, the University "encourage[d] [the student] to

14

be patient." Id. ¶ 40.  And after eleven students sent a letter of complaint to the President of the University in May 2013, id. ¶ 43, the Dean of the University's College of Professional Studies "apologized for the dysfunction of the SSL program" and "offered to make amends 'however he could help,'" id. ¶ 44.  Despite allegedly acknowledging the online SSL program's shortfalls, the University "offered no refund or remedy" to the plaintiffs.  Id. ¶ 43.

While the plaintiffs have alleged that the University indicated during 2012 and 2013 that it would make improvements to the online SSL program, the District of Columbia Court of Appeals, adopting an opinion by the United States Court of Appeals for the Seventh Circuit, has stated:

> We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. It is, after all, an equitable doctrine.  It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations.

East v. Graphic Arts Indus. Joint Pension Trust, 718 A.2d 153, 160 (D.C. 1998) (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th Cir. 1990)).  Therefore,

> [e]quitable tolling, when applicable, does not extend the statute of limitations indefinitely. [A p]laintiff is required to bring suit within a reasonable time after she obtains, or by due diligence could obtain, the information necessary to pursue the claim; unless the plaintiff does so, she cannot avoid the bar of limitations.

Id. at 161.  Here, the Complaint shows that the students had identified the program's shortcomings as early as January 21, 2012, Compl. ¶ 34, and that in the ensuing months, "no improvements were made," id. at 38.  Instead, "[t]he online 'courses' continued to consist of co-opted PowerPoint slides from the in-class portion, with no accompanying video or lecture," and "[b]y and large, the students were left to teach themselves the material."  Id.  These allegations, which the Court must accept as true, clearly establish that during the early months of 2012, the plaintiffs "obtained . . . the information necessary to pursue the[ir Consumer Protection Act]

15

claim," East, 718 A.2d at 161, but waited nearly four years before initiating this action. Under these circumstances, the Court agrees with the defendant that the doctrine of equitable tolling does not apply.

For all of the foregoing reasons, the Court concludes that the plaintiffs' claims under the Consumer Protection Act are time-barred and must be dismissed.

### 2. The Plaintiffs' Claims for Unjust Enrichment, Fraudulent Misrepresentation, and Negligent Misrepresentation.

The plaintiffs' remaining claims fare no better. Like claims under the Consumer Protection Act, claims for unjust enrichment are also subject to a three-year statute of limitations. See Vila v. Inter-Am. Inv. Corp., 570 F.3d 274, 283 (D.C. Cir. 2009) (citing News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1221 (D.C. 2005)). A successful claim for unjust enrichment "occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Bregman, 747 F.3d at 876 (quoting Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1076 (D.C. 2008)). Accordingly, the limitations period for an unjust enrichment claim begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution." Smith v. Wash. Post Co., 962 F. Supp. 2d 79, 85 (D.D.C. 2013) (quoting Thompsen, 878 A.2d at 1221).

The plaintiffs here assert that the defendant became unjustly enriched by "retaining revenue derived from [the plaintiffs'] tuition payments" and that "[r]etention of these benefits . . . would be unjust and inequitable because [the defendant] falsely and misleadingly represented the nature and quality [of the SSL program]." Compl. ¶ 66. As the Court has already determined, the plaintiffs became aware of the alleged deficiencies in the program shortly after the program began in 2012, as indicated by the numerous complaints lodged about the program beginning on

16

January 21, 2012. See id. ¶¶ 34–41. It necessarily follows that the plaintiffs were also aware that the defendant was being unjustly enriched by retaining their tuition payments. Therefore, the plaintiffs' claim of unjust enrichment accrued more than three years before their Complaint was filed, rendering it time-barred.

Similarly, the plaintiffs' fraudulent and negligent misrepresentation claims are each subject to a three-year statute of limitations. See Drake, 993 A.2d at 617 (citing D.C. Code § 12-301(7)). "In order to prove fraudulent misrepresentation, a plaintiff must prove (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages." Wetzel v. Capital City Real Estate, L.L.C., 73 A.3d 1000, 1002–03 (D.C. 2013) (alteration in original) (citations omitted). And "a plaintiff alleging negligent misrepresentation[] . . . must show (1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment." Sundberg v. TTR Realty, L.L.C., 109 A.3d 1123, 1131 (D.C. 2015) (citation omitted). As the Court has already explained, a "statute of limitations begins to run when a plaintiff knows or reasonably should know of (1) the existence of the alleged injury, (2) its cause in fact, and (3) some evidence of wrongdoing." Bakeir v. Capital City Mortg. Corp., 926 F. Supp. 2d 320, 334 (D.D.C. 2013) (quoting Drake, 993 A.2d at 617).

The Complaint alleges that, in 2012, the plaintiffs discovered that they "were deceived" into paying tuition for a class that "was not what [the University] advertised and . . . what [the plaintiffs paid for." Compl. ¶ 46. The plaintiffs' complaints between January 2012 and November 2012 show that they were aware of the defendants' alleged wrongdoing. For

17

example, the plaintiffs allege that the defendant made both a fraudulent and negligent misrepresentation because it "failed to disclose that there would be no accompanying video or audio file to explain the PowerPoint slides in any of the [twelve] courses." Id. ¶¶ 72, 82. The plaintiffs further contend that, despite numerous complaints issued in 2012, "the online 'courses' continued to consist of co-opted PowerPoint slides . . . with no accompanying lecture." Id. ¶ 38; see also id. ¶¶ 24–37. The plaintiffs' complaints, and admission that no improvements were made, establish that they were aware of the defendant's supposed misrepresentations regarding the online SSL program in early 2012. The Court therefore finds that the plaintiffs knew, or with the exercise of reasonable diligence should have known, of the University's alleged wrongdoing more than three years prior to seeking relief on April 7, 2016, for the University's allegedly fraudulent or negligent misrepresentation. The Court must therefore dismiss these claims as time-barred.[4]

### IV. CONCLUSION

For the reasons stated above, the Court concludes that the defendant has adequately established the jurisdictional requirements set forth in the CAFA and that the plaintiffs' claims are all time-barred.[5] Accordingly, the Court will deny the plaintiffs' motion to remand and grant the defendant's motion to dismiss the Complaint with prejudice.

**SO ORDERED** this 18th day of April, 2017.[6]

REGGIE B. WALTON  
United States District Judge

---

[4] For the same reasons articulated above with respect to the Consumer Protection Act claim, see supra at 13–15, the Court concludes that equitable tolling and the continuous tort doctrine do not apply to rescue the plaintiffs' claims from the applicable statutes of limitations.

[5] Because the Court concludes that each of the plaintiffs' claims is time-barred, the Court need not address the merits of the University's other arguments in favor of dismissal.

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.